**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jay Daniel RITTER, Defendant–
Appellant.**

**No. 97–1182.**

United States Court of Appeals,
Sixth Circuit.

Submitted June 10, 1997.

Decided July 22, 1997.

James R. Redford (briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

Henry A. Martin, Fed. Public Defender, Howard W. Gillingham (briefed), Federal Public Defenders Office, Grand Rapids, MI, for Defendant–Appellant.

Before: KEITH, KENNEDY and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

In this appeal Defendant–Appellant Jay Daniel Ritter challenges a condition of his supervised release requiring him to notify his present and future employers about his conviction for embezzlement from a former employer. The district court adequately found that the requirement was reasonably related to the dual objectives of promoting Ritter's rehabilitation and of protecting the public; we therefore affirm.

## I. BACKGROUND

Twice during the spring of 1996 while working in the telephone customer service division at the operations center of the Michigan National Bank in Lansing, Michigan, Jay Daniel Ritter electronically transferred funds ($3,000 each time) from another customer's account into his own account. Ritter had previously made two "dry runs," where he simply linked his account with another but did not transfer any funds. When confronted by the bank, Ritter immediately acknowledged his crime. Ritter later explained to the court that at the time collection agencies were calling and his car was about to be repossessed, so he panicked and took the "easiest way out" of his over-extended financial situation. Joint Appendix ("J.A.") at 51.

Ritter, then in his late twenties, had never before been arrested. He had been steadily employed since high school and had served overseas with the National Guard. Currently, and at the time of his sentencing, he works for an air cargo company as a flight dispatcher, scheduling and briefing flight crews, arranging flight plans and fuel stops, and coordinating the loading of freight. He also inputs maintenance information into the computer database. *See* J.A. at 53 (Plea Hearing).

Following the filing of a one-count information, Ritter pleaded guilty to embezzling $6,000 from a federally-insured bank in violation of 18 U.S.C. § 656. During the plea discussions the court advised Ritter that as part of his rehabilitative process and for pragmatic reasons he should inform his new employer of his felony conviction. J.A. at 55–56 (Plea Hearing). The court initially expressed an unwillingness to credit Ritter for accepting responsibility under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 3E1.1 (1995 & Supp.1996), in part because Ritter had thus far refused to tell his employer about the conviction. Ultimately, however, the court decreased the offense level by two levels for acceptance of responsibility. J.A. at 69 (Sentencing Hearing).

The court then sentenced Ritter to thirty days in custody, with a halfway house and work privilege recommendation, followed by a period of three years of supervised release.

As a special condition of supervised release, the court ordered Ritter to inform his employer of his conviction. J.A. at 43 (Judgment). Specifically, Ritter was to notify his present and future employers of the fact that he had been convicted of embezzlement.[1] J.A. at 74 (Sentencing Hearing). The court also ordered that Ritter comply with a standard condition of supervised release requiring:

> [A]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

J.A. at 43 (Judgment); see U.S.S.G. § 5B1.4(a)(13). Ritter successfully moved this court for a stay of the employer notification condition pending appeal.

## II. DISCUSSION

Since all parties agree that in principle district courts have the power to impose the type of employer notification requirement at issue, this case solely concerns the propriety of imposing such a requirement on Ritter. Ritter argues that the challenged requirement was imposed arbitrarily and unreasonably because the court failed to take into account the circumstances of his crime and his unblemished criminal history. He further adds that the condition violates his First Amendment freedoms of speech and association.

■■■ A sentencing court may order as a condition of supervised release any condition that it considers to be appropriate to the extent that such condition:

(1) is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant, and the need to afford adequate deterrence, to

protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(2) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission.

*See* 18 U.S.C. §§ 3583(d), 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D); U.S.S.G. § 5D1.3(b).[2] Accordingly, we review the district court's imposition of a special condition of supervised release only for abuse of discretion. *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir.1992). "This Circuit mandates that where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld." *Id.*

■■■ Supervisory conditions that implicate fundamental rights such as freedom of speech and freedom of association are subject to careful review, but if primarily designed to meet the ends of rehabilitation and protection of the public, they are generally upheld. *United States v. Peete*, 919 F.2d 1168, 1181 (6th Cir.1990); *United States v. Holloway*, 740 F.2d 1373, 1383 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). In *Bortels*, we upheld a condition of supervised release prohibiting the defendant from associating with her fiancé because she had acted recklessly and endangered the community at large in a high-speed chase to protect her fiancé from arrest. *Bortels*, 962 F.2d at 560. In *Peete*, where a city councilman had sought bribes in exchange for his vote, we allowed a probation condition prohibiting him from serving in or seeking elected public office. *Peete*, 919 F.2d

---

1. Though the court's order did not explicitly state that Ritter needed to notify future employers, the judge orally explained that the requirement applied to future employers, J.A. at 64 (Sentencing Hearing), and all parties understood that to be the case.

2. The district court appropriately characterized Ritter's requirement as a general notification requirement under U.S.S.G. § 5D1.3(b) and not an occupational restriction under U.S.S.G. § 5F1.5. *See* J.A. at 63 (Sentencing Hearing).

at 1181. In *United States v. Berridge*, 74 F.3d 113 (6th Cir.1996), after a former vice president of a bank pleaded guilty to making false statements on loan applications, we upheld a condition prohibiting him from obtaining employment in the banking industry during the period of his probation. *Id.* at 114–15, 118–19. Despite the lower court's failure to set forth its rationale, the *Berridge* court stated that the justification for the employment restriction in that case was obvious—the restriction would aid the defendant in avoiding the conditions that led him to commit the offense. *Id.* at 119. As these cases and others attest, even though supervised release restrictions may affect constitutional rights such as First Amendment protections, most restrictions are valid if directly related to advancing the individual's rehabilitation and to protecting the public from recidivism.

The Seventh Circuit has upheld an employer notification requirement nearly identical to the one Ritter now challenges. *United States v. Schechter*, 13 F.3d 1117 (7th Cir. 1994). The defendant in *Schechter*, a computer consultant who pleaded guilty to tax evasion charges, admitted to stealing $95,000 from three employers in 1985 and 1991. *Id.* at 1119. As a condition of his supervised release, Schechter was ordered to notify all employers of his past crimes and current status on supervised release and to allow the Probation Department to verify the notification. *Id.* at 1118. Ritter's attempts to distinguish *Schechter* based on the egregiousness of Schechter's conduct are unavailing. While it is certainly true that Ritter has not displayed the same proclivity for bilking employers as Schechter, the judge sentencing Ritter still had legitimate concerns in mind when imposing the employer notification requirement.

■ In Ritter's case the sentencing court carefully considered the statutory criteria and tailored the special conditions of super-

vised release to Ritter. At the time of the plea hearing Ritter had not told his employer nor his great aunt with whom he lived about his conviction. J.A. at 55–57 (Plea Hearing). The district court was rightly bothered by Ritter's reluctance to acknowledge his wrongdoing to those most likely to be potentially impacted. The court advised that one of the ways for Ritter to help insure that his future behavior remains lawful and constructive is "to make an admission to people that need to know—not everybody, but people that need to know." J.A. at 56 (Plea Hearing). If Ritter informs his employer of his embezzlement conviction, the employer will likely take steps to increase monitoring or to rid Ritter's work environment of enticements to take another "easy way out." Accordingly, from a rehabilitative standpoint, the employer notification requirement fosters Ritter's ability to account for his behavior and to remain a law-abiding citizen.

In terms of public safety, the sentencing judge took into consideration that Ritter's current job as a dispatcher does not involve handling money, financial records, or valuable cargo. Notwithstanding this limited accessibility to company property, the court determined that the minimally-intrusive notification requirement would alleviate potential threats to current and future employers posed by Ritter's prior conduct. Otherwise, unsuspecting employers might consider Ritter for a position of trust or one with easy access to valuables and thus become particularly vulnerable to a recurrence of criminal activity. *See* J.A. at 56. Without notification, an ignorant employer shoulders a heavy risk of financial harm. Simple notification therefore enables an employer to take appropriate precautions without unduly infringing upon Ritter's ability to pursue a livelihood. We believe that notification is less restrictive than an outright occupational ban prohibiting Ritter from working in a position of trust or within a particular industry.[3]

---

**3.** We recognize that an employer notification requirement may result in an employer deciding not to hire for or retain in a particular job a person convicted of embezzlement, and we surmise that this is what Ritter fears. Nonetheless, notification is less restrictive than an occupational ban, and yet notification may be adequate to serve the goals of rehabilitation and protection of the public against recidivism.

After considering the competing interests in Ritter's case, the sentencing court rationally concluded that the employer notification requirement was "reasonably related to the nature and to the circumstances of his crime, and to prevent him from deceiving employers in the future." J.A. at 64 (Sentencing Hearing). This was not an abuse of the court's broad discretion to impose appropriate conditions of supervised release.[4] The challenged requirement must be upheld as it bears a direct relationship to Ritter's embezzlement offense, to his reluctance to own up to his prior behavior, and to protection of the public from a recurrence of criminal conduct, and intrudes minimally upon Ritter's liberty and First Amendment rights.

Though we are sympathetic to Ritter's current plight, we note that it is largely self-inflicted. That Ritter is ashamed of his embezzlement conviction does not mean that he should be able to hide it from those who are particularly vulnerable to a repeat performance.

## III. CONCLUSION

The district court's imposition of an employer notification condition of supervised release as part of Ritter's sentence for embezzlement is hereby **AFFIRMED**.

---

4. Ritter strongly protests the district court's expressed belief that in every supervisory case the employer is automatically contacted by the Probation Department. *See* J.A. at 61 (Sentencing Hearing). Ongoing verification of employment is a vital part of the supervision process and can be accomplished through contacts with the employer or through other methods such as by review of pay stubs. *See* Administrative Office of the United States Courts, Supervision of Federal Offenders, Monograph 109 at 31 (June 1991). Apart from employment verification, notifying an employer of a supervisee's conviction falls within the probation officer's duty to notify specific third parties to whom there is a reasonably-foreseeable risk of physical or financial harm from a person under supervision. *See id.* ("The officer has a legal duty to assess third-party risk and require official notification of the offender's status if there is a reasonably foreseeable risk to the employer or others."). A recommended "standard" condition of supervised release, imposed upon Ritter in the instant case, *see* J.A. at 43, provides:

> [A]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

U.S.S.G. § 5B1.4(a)(13). Under this guideline, absent a more explicit court order, the probation officer clearly exercises discretion in the decision to require a supervisee to advise an at-risk employer of a conviction. If, however, there is to be an outright requirement that a person under supervision inform his or her employer about a criminal conviction, then the Probation Manual promulgated by the Administrative Office of the U.S. Courts directs that the condition "should generally be imposed by the court as a formal *special* condition of probation." Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Vol. X, Probation Manual, Ch. 4 at 37 (March 1992) ("Probation Manual") (emphasis added). For instance, if the probation officer decides to warn an employer and the supervisee "strongly opposes such action, the officer should present the matter to the court and request either an order directing the officer to make the warning or a modification hearing to impose a condition that the offender make the necessary disclosure." *Id.* at 38. Therefore, even though the probation officer has some degree of discretion to require notification to at-risk employers in run-of-the-mill supervisory situations subject always to the ultimate authority of the court, the Probation Manual guides the officer to bring the issue to the sentencing judge when the supervisee strongly objects to the impending notification. Though Ritter vehemently opposes notification, his requirement arises from a formal court-ordered special condition of supervised release and not simply from the standard third-party risk condition, § 5B1.4(a)(13); thus, we need not delve further into standard Probation Department practice in this area.