**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eric BRANDENBURG, Defendant–
Appellant.**

No. 05–1261.

United States Court of Appeals,
Sixth Circuit.

Dec. 14, 2005.

Daniel R. Hurley, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

James R. Gerometta, Loren E. Gross, Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before CLAY and COOK, Circuit Judges; OLIVER District Court Judge.*

CLAY, Circuit Judge.

Defendant Eric Brandenburg appeals a February 9, 2005 order of the United States District Court for the Eastern District of Michigan, the Honorable Bernard A. Friedman presiding, imposing special conditions on Defendant's supervised release that: (1) require Defendant to notify his parole officer of any female with whom Defendant has "social contact" within twelve hours of such contact; and (2) prohibit Defendant from co-habitating with any female for the duration of his supervised release. Defendant argues that the notification provision is unduly vague in

violation of the Due Process Clause of the Fourteenth Amendment and that the prohibition on co-habitation violates his First Amendment right to intimate association. For the reasons set forth below, we **AFFIRM** the order of the district court.

## I.

## BACKGROUND

### A. Procedural History

On January 29, 2002, Defendant Eric Branderburg pled guilty to one count of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846. Thereafter, the district court sentenced Defendant to two years of imprisonment and three years of supervised release. The terms of supervised release included a provision requiring Defendant to notify his probation officer of any female with whom he had "social contact."

Approximately one year into Defendant's supervised release, on January 10, 2005, Defendant's probation officer initiated proceedings to revoke Defendant's supervised release on the ground that Defendant violated six of his supervised release conditions. In a hearing on January 18, 2005, Defendant admitted five of the six violations. The district court dismissed the remaining count. Defendant's admitted violations include: (1) assaulting his fiancé Tammi Wilcox; (2) failing to notify his probation officer of his arrest; (3) failing to report to his probation officer; (4) failing to attend anger management classes; and (5) failing to attend a substance abuse program. At the conclusion of the hearing, the district court sentenced

*The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Defendant to two years of imprisonment followed by one year of supervised release.

The district court again imposed special conditions on the terms of Defendant's supervised release. The conditions include the earlier condition requiring Defendant to notify his probation officer of any female with whom he has "social contact." Additionally, the court imposed a new condition prohibiting Defendant from co-habitating with any female for the duration of the supervised release. Defendant appeals the constitutionality of these conditions.

## B. Facts

Defendant has a lengthy criminal history,[1] which includes numerous acts of domestic violence. In 1999, Defendant committed acts of criminal sexual conduct against his fiancée Sharon Bell. The next year, Defendant pushed Bell down the stairs, resulting in her hospitalization. The authorities at the hospital believed that this was not the first time Defendant had physically assaulted Bell. More recently, Defendant assaulted his fiancée Tammi Wilcox. Defendant's assault on Wilcox constitutes one of the many grounds for revoking Defendant's supervised release.

In light of Defendant's history of domestic violence, the district court placed special conditions on Defendant's supervised release when the court first sentenced Defendant in April of 2002 for conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846. The special conditions required Defendant to: (1) participate in an anger management program; (2) participate in a substance abuse program; (3) maintain full-time employment; (4) notify his probation officer within 12 hours of any females with which he has social contact; and (5)

avoid establishments that serve alcohol. The court explicitly stated that the conditions were "zero tolerance" conditions.

On January 20, 2004, Defendant began his supervised release. The next day, Defendant's probation officer contacted Defendant's girlfriend, Tammi Wilcox, and informed her of Defendant's history of domestic violence. On February 1, 2004, Wilcox signed a Third Party Risk Waiver acknowledging that she was aware of Defendant's history. On May 1, 2004, Defendant and Ms. Wilcox established a residence together. Throughout this period, Defendant attended weekly sessions for anger management and substance abuse.

In August 2004, however, Wilcox contacted Defendant's probation officer to report a domestic violence incident. She informed the probation officer that it was a "misunderstanding." Around this time, Defendant also quit his job and stopped attending the weekly anger management and substance abuse sessions. Consequently, Defendant's probation officer initiated the instant proceedings to revoke Defendant's supervised release in January of 2005.

At the sentencing hearing on January 18, 2005, Defendant admitted to violating the terms of his supervised release. Through his attorney, he informed the court that he needed "to get back into some counseling" and "strict supervision." (J.A. at 37.) The district court reminded Defendant that his supervised release conditions were "zero tolerance." (J.A. at 39.) The court also noted that Defendant had not committed one violation but five violations. The court then stated that it would have given Defendant the maximum three years but that it believed Defendant needed supervision once he reentered society.

---

**1.** Much of Defendant's criminal history cannot be recounted in this opinion because it occurred when Defendant was a juvenile and is therefore confidential.

Therefore, the court sentenced Defendant to two years imprisonment and one year of supervised release. Additionally, the court imposed special conditions on the terms of the release including conditions: (1) requiring Defendant to notify his probation officer of any female with whom he has social contact; and (2) prohibiting Defendant from co-habitating with any female. The court justified the co-habitation provision as follows, "I'm not going to allow this to happen again while you're on my watch," presumably referring to Defendant's attack on Wilcox. (J.A. at 41.)

## II.

## DISCUSSION

### A. Standard of Review

■ Defendant failed to object to the district court's imposition of special conditions in connection with his supervised release at sentencing, and therefore we review for plain error. *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir.2001). "To establish plain error, a defendant must show: (1) that an error occurred in the district court; (2) that the error was plain; (3) that the error affected the defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness and integrity of the judicial proceedings." *Id.* (citations omitted).

### B. Analysis

The district court did not commit plain error in conditioning Defendant's supervised release on requirements that: (1) obligate Defendant to notify his probation officer of "social contact" with any female within twelve hours of such contact; and (2) prohibit Defendant from co-habitating with any female for the duration of his supervised release.

### 1. "Social Contact" is not Unconstitutionally Vague

■ Defendant has not established that the district court's imposition of a special condition requiring him to notify his probation officer of any female with whom he has social contact constitutes plain error. A defendant has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison. *United States v. Guagliardo*, 278 F.3d 868 (9th Cir.2002) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); *United States v. Loy*, 237 F.3d 251, 263 (3d Cir. 2001); *United States v. Schave*, 186 F.3d 839, 843 (7th Cir.1999). A condition is insufficiently clear if reasonable minds could differ as to its meaning. *Guagliardo*, 278 F.3d at 872.

In this case, the condition requiring Defendant to notify his probation officer of the names, phone numbers and addresses of "any females" with whom he has "social contact," and inform the females of his history of domestic violence is sufficiently clear. We agree with the government that the condition must be read in conjunction with its purpose: to protect third parties from Defendant's acts of domestic violence. *See* U.S.S.G. 5D1.3(c)(13) ("[A]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record . . . .") Under these circumstances, "social contact" almost certainly means contact that Defendant arranges and that takes place outside of work and Defendant's mandatory treatment programs, rather than unplanned contact. Contrary to Defendant's assertion, when considered in light of Defendant's history, it would not be understood to include such things as inadvertently bumping into a woman in the grocery store.

Moreover, this condition is not new but was a condition of Defendant's earlier supervised release, on which he remained for one year. Despite violating five other conditions of his supervised release, Defendant did not once violate this condition. Defendant's ability to adhere to the condition for a full year indicates that the condition is not unduly vague.

Finally, if Defendant truly remains confused about the meaning of "social contact," he may petition the district court for clarification of its sentencing order. *United States v. Lilly*, 206 F.3d 756, 762 (7th Cir.2000) (citing Fed. R.Crim. Pro. 32.1 advisory committee's note). If the district court refuses to clarify the sentencing order and Defendant is later charged with violating the order, Defendant will then have the opportunity to challenge his alleged violation of the order.

## 2. The Prohibition on Co-habitation Does Not Violate the First Amendment

Defendant has not established that the district court's imposition of a special condition prohibiting Defendant from cohabitating with any female for the duration of his supervised release was plain error. The district court has broad discretion to impose appropriate conditions of supervised release. *United States v. Ritter*, 118 F.3d 502, 506 (6th Cir.1997). The district court does not abuse that discretion so long as the condition bears a direct relationship to the dual goals of advancing a defendant's rehabilitation and protecting the public and involves no greater deprivation of liberty than is reasonably necessary to achieve these goals. *Id.; see also Kingsley*, 241 F.3d at 838–39 n. 15; *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir.1992) (*per curiam*). This is true even where the condition impinges on a defendant's First Amendment freedoms of speech and association. *Ritter*, 118 F.3d at 504–06 (upholding a condition requiring the defendant to notify his employer of his embezzlement conviction against the defendant's First Amendment challenges to the condition); *see also Bortels*, 962 F.2d at 559–60 (upholding a condition prohibiting the defendant from associating with her fiancé or any other convicted felon); *but see United States v. Worthington*, No. 96–1597, 1998 WL 279379, at *18 (6th Cir. May 21, 1998) (unpublished) (vacating a special condition prohibiting the defendant from co-habitating with any female as overbroad and unrelated to the defendant's drug offense). Additionally, a district court's failure to articulate reasons for conditions is harmless error where the reasons are obvious from the record. *Ritter*, 118 F.3d at 504.

Here the condition is directly related to the dual goals of Defendant's rehabilitation and the protection of the public, and the condition involves no greater deprivation of Defendant's association rights than reasonably necessary to achieve these goals. In contrast to the defendant in *Worthington*, Defendant has a history of abusing women with whom he lives, namely Sharon Bell and Tammi Wilcox. *See Kingsley*, 241 F.3d at 839 (holding that a complete ban on any driving was permissible in light of the defendant's "life-long behavior patterns"). Because of this history, the district court reasonably believed that Defendant was likely to abuse any female with whom Defendant lived. *See id.* To preclude the possibility of such abuse, the court prohibited Defendant from living with a woman for the duration of his supervised release. Additionally, unlike in *Worthington*, the breadth of the condition is reasonably necessary to effectuate these goals. In 2002, the Court imposed a narrower condition requiring Defendant to notify his probation officer of

his social contact with females so that the probation officer could contact the females. This condition was inadequate to prevent Defendant from committing domestic violence, as Defendant's attack on Tammi Wilcox demonstrated. The court is not required to impose officer visitations before prohibiting co-habitation completely because there is absolutely no reason to believe that occasional visits would be adequate to prevent Defendant from abusing his girlfriends, thereby rendering the co-habitation provision unnecessary. *See* U.S.S.G. § 5D1.3(b) (stating that the deprivation should be no greater than "reasonably necessary"). Moreover, the co-habitation provision will last only one year and interferes with Defendant's right to associate far less than the additional year in prison that the district court indicated it had considered imposing on Defendant.

## III.

### CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** Defendant's sentence.