RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0396p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 06-5548

JONATHAN GREGORY BROGDON,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 05-10045—James D. Todd, Chief District Judge.

Argued: July 27, 2007

Decided and Filed: September 27, 2007

Before: SILER and COOK, Circuit Judges; REEVES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

DANNY C. REEVES, District Judge. Defendant-Appellant Jonathan Gregory Brogdon appeals the sentence and sex-offense-related conditions of supervised release imposed by the district court. Because the sentence is procedurally and substantively reasonable and because the conditions of supervised release are reasonably related to the rehabilitation of the defendant and the protection of the public, we affirm.

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

# BACKGROUND

On November 28, 2005, Brogdon pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Following his guilty plea, the United States Probation Office ("USPO") prepared a presentence report dated January 31, 2006, indicating a total offense level of 13, a criminal history category of I, and a recommended sentencing range of 12 to 18 months.[1] Neither party filed objections to this report.

However, on February 21, 2006, the USPO prepared a second report, indicating a total offense level of 23 and a criminal history category of VI, resulting in a recommended guideline range of 92 to 115 months.[2] Brogdon objected to these calculations, and the district court addressed his objections at the sentencing hearing on April 13, 2006. Following a lengthy discussion and testimony from Brogdon and the probation officer, the court concluded that the USPO had correctly calculated Brogdon's base offense level and criminal history in the second report.[3] Accordingly, the court noted that it would consider the applicable guideline range in imposing a sentence. In particular, the court stated that,

> I think the misdemeanors are all correctly included, and I think that perhaps we get a piling-on effect of all these misdemeanors in this case, but it's my judgment that the probation officer has correctly calculated the criminal history and base offense level. So the probation officer's suggested guideline range is correctly calculated of 92 to 115 months. . . . The court will consider that as a substantial factor, but I am not, however, bound by that range. I can consider other factors.
>
> Mr. Brogdon, your case is unusual to me because what makes it unusual is that you, I think, have more misdemeanor convictions than perhaps anybody I've ever seen of such a young age. You have been a one-man misdemeanor wave in Gibson County, and you've been giving officers reason to arrest you for a long time. Now it's true that some of these are not major deals, speeding, an occasional bad check violation; but I'm troubled by the numerous indecent exposure convictions, the aggravated assault conviction, the burglary conviction and the controlled substances offense. And the criminal history that you have, the background that you have, convinces me that you obviously have a difficult time in obeying the law.
>
> Given that long criminal history, I'm of the opinion that the guidelines in your case are an appropriate range of sentences. That extremely high criminal history score would justify a sentence at the upper end of that guideline range, but I'm also going to take into account your limitations, your mental and academic limitations, and sentence you toward the low end of this guideline range.

---

[1] The first presentence report is not contained in the record before the Court.

[2] The second report provided a base offense level of 24, with two added levels for the number of firearms, and a three level reduction for acceptance of responsibility, resulting in a total offense level of 23. The criminal history computation indicated a total of 22 criminal history points and considered offenses dating back to August 22, 1984. The report concluded that this established a criminal history category of VI.

[3] The court determined that the base offense level had been properly calculated because Brogdon was released from jail in 1991, less than fifteen years before he was found in possession of the firearms in 2005. The court further determined that the prior convictions should be considered in light of the commencement of the instant offense, which it determined to be 1989 when Brogdon was convicted of a felony but released pending sentencing.

(J.A. 62-64)  In conclusion, the court noted that it had considered all the factors provided in 18 U.S.C. § 3553 and sentenced Brogdon to 92 months imprisonment and three years of supervised release.

In addition to the standard conditions of supervised release, the court imposed several sex-offense-related conditions, including: (1) the collection of DNA; (2) participation in a specialized sex offender treatment program which may include the use of a plethysmograph and a polygraph; (3) that the Defendant not possess pornography; (4) that he not engage in any direct or indirect contact with any child under the age of eighteen; (5) that he not loiter near schoolyards, playgrounds, swimming pools, arcades, theaters, or other places frequented by children; (6) that he not use any sexually-oriented telephone numbers or services; (7) that he not date any woman who has children under the age of eighteen in her custody; (8) that his place of residence not be located close to any childhood parks, schools, playgrounds, public pools or any other location frequented by children; and (9) that the probation officer may impose a curfew if it is deemed necessary.  The district court denied Brogdon's objection to these conditions.

## DISCUSSION

### I.      Reasonableness of Brogdon's sentence under *Booker* and *Rita*

Brogdon claims that the sentence imposed by the district court was both procedurally and substantively unreasonable.  In particular, he asserts that the district court erred in calculating his criminal history points under U.S.S.G. § 4A1.2(e)(2), gave improper weight to the recommended guideline range, failed to adequately consider the pertinent § 3553(a) factors, and imposed a sentence that was greater than necessary.

After *Booker*, district courts have enhanced discretion in sentencing criminal defendants, and a sentence will be upheld on appeal as long as it is procedurally and substantively reasonable. *United States v. Crowell*, 493 F.3d 744, 751 (6th Cir. 2007); *see also United States v. Rita*, 127 S. Ct. 2456, 2465 (2007) (noting that the "appellate 'reasonableness' review merely asks whether the trial court abused its discretion").  A sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness, and it is incumbent upon the defendant to demonstrate that his sentence is unreasonable.  *Crowell*, 493 F.3d at 751; *Rita*, 127 S. Ct. at 2465.

"[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006).  Because reasonableness encompasses both substantive and procedural components, an appellate court must consider the length of the sentence imposed as well as "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007) (citing *United States v. Webb*, 403 F.3d 373, 383-85 (6th Cir. 2005)).

Procedurally, a district court must "explain[] its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Trejo-Martinez*, 481 F.3d 409, 412-13 (6th Cir. 2007).  The sentencing court must consider the applicable guideline range as well as the other relevant factors outlined in 18 U.S.C. § 3553(a).  However, the court is not required to explicitly consider each of the factors or engage in a "ritualistic incantation." *Trejo-Martinez*, 481 F.3d at 413. Rather, a "sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion." *Id.*

Substantively, a sentence that falls within "a correctly calculated guideline range" is "entitled to a rebuttable presumption of reasonableness." *Id*. (citing *United States v. Cruz*, 461 F.3d 752, 754 (6th Cir. 2006)); *see also Rita*, 127 S. Ct. at 2456. A sentence may be substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) (citing *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)).

Here, Brogdon has failed to establish that his sentence was either procedurally or substantively unreasonable. First, it is clear that the district court properly determined the applicable guideline range based on Brogdon's criminal history and base offense level. Although Brogdon contends that his convictions prior to 1989 should not be considered in his criminal history, this argument is contrary to the Sentencing Guidelines and this Court's unpublished decision in *United States v. Susewitt*, 125 F. App'x 681, 684 (6th Cir. 2005).

This Court reviews de novo a district court's interpretation of the Sentencing Guidelines. *United States v. Williams*, 411 F.3d 675, 677 (6th Cir. 2005). Section 4A1.2(e)(2) of the Sentencing Guidelines instructs district courts to count "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense" in determining a defendant's criminal history. U.S.S.G. § 4A1.2(e)(2). The application notes to this section further explain that "[a]s used in § 4A1.2(d)(2) and (e), the term 'commencement of the instant offense' includes any relevant conduct." U.S.S.G. § 4A1.2, cmt. n. 8. Relevant conduct is defined, in pertinent part, as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

In the present case, Brogdon argues that the district court improperly calculated his criminal history category based on the commencement of the instant offense. More specifically, he contends that he did not "exercise[] any control over the firearms from May 25, 1989 to June 1, 1989" and from 1993 to December 2004. (Petr's Br. 15) Therefore, he argues that the commencement of the instant offense, that is, being a felon in possession, did not occur until 2004.

In *Susewitt*, this Court explicitly rejected the defendant's argument that the United States was required to prove continuous possession of a weapon in relation to the commencement of the offense. *Susewitt*, 125 F. App'x at 684. In that case, the defendant was convicted of possession of a sawed-off shotgun, and the district court determined his criminal history in relation to the time he admitted he sawed off the shot gun. As a result, the district court found that the commencement of the offense occurred in 1993, rather than 2002 when the defendant was found to be in possession of the weapon. On appeal, this Court affirmed the district court's determination, but vacated his sentence on other grounds. In doing so, the Court noted that,

> Susewitt argues that in order to show that the offense commenced when Susewitt sawed off the weapon in 1993, the government was required to establish that Susewitt continuously possessed the weapon from that time until the weapon was found in his residence in November 2002. Susewitt contends that this is so because "the offense of felon in possession of a firearm is a continuing offense." . . .

> [T]here is simply nothing in the Guidelines or in the case law that imposes such a requirement. Indeed, such a requirement would render wholly ineffective Application Note Eight to § 4A1.2(e), which, as explained above, instructs the sentencing judge to determine the date of commencement of the instant offense by reference to any "relevant conduct," as defined in § 1B1.3. U.S. S.G. § 4A1.2, cmt. n. 8. The Fourth Circuit has explained that Application Note Eight "reflects the fundamental principle of the Sentencing Guidelines that relevant conduct should be treated as an integral part of the offense of conviction." *United States v. Dixon*, 318 F.3d 585, 590 (4th Cir. 2003). Susewitt's argument would have us ignore the Guidelines' instruction to refer to relevant conduct in determining the date of the commencement of the offense, and is therefore untenable.

*Id*. at 684. The Court concluded that the district court had properly determined the time of the commencement of the offense and that such a conclusion was supported "not only by common sense but also by the language of § 1B1.3." *Id.*

Here, the district court relied on this Court's unpublished decision in *Susewitt*, and Brogdon has failed to cite any authority to the contrary. It is undisputed that Brogdon possessed some of the firearms since childhood and that he became a convicted felon on May 25, 1989. It also undisputed that Brogdon remained on bond from May 25, 1989, to June 1, 1989, and that he continued to own the firearms during that time. The district court thoroughly reviewed the record before it, and both the probation officer and the defendant testified concerning Brogdon's possession of the weapons. However, during his testimony, Brogdon failed to state that he did not possess the firearms from May 25 to June 1, 1989. Instead, he claimed that the judge told him he could have shotguns and rifles in 1989 and that, although he owned the weapons since childhood, they remained at his father's residence until he inherited them in 2004. After hearing the testimony and the arguments from counsel, the district court held that,

> [t]he question before me is do we count misdemeanors more than ten years old, and the answer is that you count misdemeanors that occurred within ten years of the beginning of the relevant conduct in this case. And under the authority of *Susewitt*, the ten-year period starts back from the date he came into violation in this case, and he came into violation on May 25, '89.

(JA 62).

This Court agrees with the district court's analysis and conclusion concerning the date of the commencement of the offense. Brogdon admitted that he possessed the firearms since childhood, and the district court accurately determined that his initial possession in violation of federal law after his conviction on May 25, 1989, was relevant conduct to the instant offense. *See also United States v. McGee*, 494 F.3d 551, 555 (6th Cir. 2007) (affirming the sentencing court's calculations under § 4A1.2(e) based on the defendant's admission that he possessed the firearms five or six years prior

to his arrest).[4]  Therefore, the district court properly considered Brogdon's criminal history in light of the 1989 relevant conduct under U.S.S.G. § 4A1.2(e)(2).

Next, Brogdon contends that the district court failed to properly balance the factors under *Booker* because it gave improper weight to the advisory Guidelines range and failed to provide sufficient evidence of its consideration of the other § 3553 factors.  In support of this assertion, Brogdon points to the district court's statement that the Guideline range was a "substantial factor." (J.A. 62)  Brogdon claims this statement suggests that the court was "unreasonably influenced" by the guidelines, citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005).

As an initial matter, the record reflects that the district court's full statement regarding the recommended Guideline range was as follows:  "The court will consider that as a substantial factor, but I am not, however, bound by that range.  I can consider other factors." (J.A. 62)  Immediately following this statement, the district court asked Brogdon if he wanted to make a statement, and Brogdon declined.  The district court noted Brogdon's extensive criminal history and that it considered the Guidelines to be an appropriate range in this case.  The court also considered other relevant factors and noted that Brogdon's "extremely high criminal history score would justify a sentence at the upper end of that guideline range, but I'm also going to take into account your limitations, your mental and academic limitations, and sentence you toward the low end of this guideline range." (J.A. 63-64)  Finally, the court considered the history and characteristics of the defendant in imposing special conditions of supervised release, including drug and alcohol treatment and sex-offense related conditions, and waived the assessment of any fine.

The court below followed the "model approach to sentencing in the aftermath of Booker." *United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006).  The sentencing court "properly calculated the guidelines range, then carefully considered the appropriateness of that range as applied to the defendant before him in light of the concerns encompassed by the statutory factors." *Id*.  Then, the court "[b]alanc[ed] competing interests, goals, and individual characteristics," and "found the recommended guidelines range to be appropriate." *Id*.

---

[4] In *McGee*, the Court further noted that the rule of lenity did not apply because the defendant had failed to present any testimony or evidence that he did not possess the firearms during the period in question.  The Court noted that,

> [b]ased on Appellant's admission that he acquired the shotgun five or six years prior to his July 13, 2005 arrest, the PSR stated that he committed the instant felon-in-possession offense in 1999 or 2000, which was within ten years of his 1992 felony drug conviction.  For this reason, the PSR included a two-point addition to his criminal history category.  The district court made the same determination.
> . . .
> Because the only evidence in the record with respect to this issue is Appellant's admission to Sergeant Boyce that Appellant first possessed the shotgun five to six years ago, the district court did not err.  Just as we recognized that a prosecutor cannot "rely solely upon 'evidence' created through the phrasing of [his] own question," *United States v. Frost*, 125 F.3d 346, 357 (6th Cir. 1997), Appellant in the instant case cannot rely solely - especially after choosing to not testify, file an affidavit, or make allocution - on his counsel's argument during sentencing proceedings in concluding that a factual ambiguity exists with respect to the question of how long he possessed the shotgun. *See United States v. Kane*, 887 F.2d 568, 572 (5th Cir. 1989) (statements by counsel are not evidence); *United States v. Peterson*, 808 F.2d 969, 975 (2d Cir. 1987) (same).

*McGee*, 494 F.3d at 555.  Similarly, in the present case, Brogdon failed to testify that he did not possess the firearms from May 25 to June 1, 1989.

As the Supreme Court noted recently in *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007),

> when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a) – that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way – or argues for departure, the judge normally need say no more.

*Rita*, 127 S. Ct. at 2468. In short, "*Rita* simply requires the sentencing judge to set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Murillo-Monzon*, 2007 WL 2052247, at *7 (6th Cir. July 18, 2007) (citing *Rita*, 127 S. Ct. at 2458) (internal quotation marks omitted). In the present case, it is clear that the sentencing court thoroughly considered all of Brogdon's and the United States' arguments in imposing a sentence at the lower end of the guideline range. Further, the court properly considered the Guidelines as advisory under *Booker*.

Brogdon also contends that his sentence is unreasonable and greater than necessary to comply with § 3553(a) because the district court failed to consider the firearms as family heirlooms even though Brogdon was not eligible for the exception under U.S.S.G. § 2K2.1(b)(2). However, the United States contends that Brogdon has forfeited this objection under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), because he failed to raise the issue before, during, or when prompted at the conclusion of the sentencing hearing. Under *Bostic*, "[i]f a party does not clearly articulate any objection and the grounds upon which the objection is based, when given this final opportunity to speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal." *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004).

Although Brogdon argued extensively concerning the application of *Susewitt* and his criminal history score in calculating the applicable Guidelines range, he never requested a departure or challenged the reasonableness of his sentence generally. Accordingly, because Brogdon never raised the argument concerning the firearms under § 2K2.1(b)(2), and because the district court did not have the opportunity to address it at the time of sentencing, we will review the reasonableness of his sentence for plain error.

Here, Brogdon has failed to present any evidence that his sentence was unreasonable or that the district court committed plain error in failing to consider the firearms as family heirlooms. It is undisputed that Brogdon came into possession of additional firearms after becoming a convicted felon. In fact, Brogdon had already been convicted of at least three felonies at the time he admitted to possessing the firearms in 2004. Moreover, he concedes that he did not qualify for the family heirloom exception under the Sentencing Guidelines.

Because a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness, it is incumbent on a defendant to demonstrate that the sentence is unreasonable. *Crowell*, 493 F.3d at 751. In the present case, Brogdon has failed to point to any factor that he raised before the district court that the district court failed to consider. *See id*. Brogdon contends that the sentence was unreasonable and longer than necessary, "but the 'mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment in § 3553(a) is insufficient to rebut the presumption of reasonableness." *Id*. at 751 (*citing United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006)). Therefore, after reviewing the record and the

findings of the district court at sentencing, this Court concludes that Brogdon's sentence was both procedurally and substantively reasonable.

## II.      Special Conditions of Supervised Release

Brogdon also argues that the district court erred in imposing the sex-offense-related conditions of supervised release.  This Court reviews the district court's imposition of special conditions of supervised release for an abuse of discretion. *United States v. Modena*, 302 F.3d 626, 636 (6th Cir. 2002).  First, the Court must determine whether the district court adequately stated in open court at the time of sentencing "its rationale for mandating special conditions of supervised release." *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006) (quoting *United States v. Kingsley,* 241 F.3d 828, 836 (6th Cir. 2001)).  Then, under the substantive inquiry, the Court must determine whether the "condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public." *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997).  If the conditions are reasonably related to these goals, they must be upheld.  *Id*.

In the present case, Brogdon contends that the district court erred under both dimensions of this inquiry.  He asserts that the district court failed to adequately state its reasons for imposing the special conditions and that the conditions are not reasonably related to the history or characteristics of this Defendant.  During the sentencing hearing, the district court noted that it was "troubled by the numerous indecent exposure convictions" and that Brogdon "obviously ha[s] a difficult time in obeying the law." (J.A. 63)  Thereafter, the court imposed the sentence and the special conditions of supervised release.  Brogdon objected to the special conditions and argued that they were not adequately supported by the record.  The district court noted and denied his objection.

Although it does not appear that the district court offered any specific rationale for the imposition of the special conditions of supervised release, this omission constitutes harmless error under the circumstances of the case.  This Court has repeatedly held that "a sentencing court's failure to expressly explain its reasons for exacting a particular special condition of supervised release will be deemed harmless error if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety." *Kingsley*, 241 F.3d at 836 (citing *Ritter*, 118 F.3d at 504; *United States v. Berridge*, 74 F.3d 113, 118-19 (6th Cir. 1996)); *see also Carter*, 463 F.3d at 529 n.2.  Here, as discussed below, the special conditions are more than amply supported by the record and reasonably relate to the rehabilitation of the Defendant and the enhancement of public safety.

Under 18 U.S.C. § 3583(d), a district court may impose "special" conditions of supervised release that it deems appropriate. *Modena*, 302 F.3d at 636; 18 U.S.C. § 3583(d). To impose such special conditions, however,

> the district court must determine, among other things, that the condition is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant, and the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id*. (citing *Ritter*, 118 F.3d at 504; *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)).  In addition, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for" the sentencing purposes and must be "consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Thomas*, 212 F. App'x 483, 486 (6th Cir. 2007).

This Court recently addressed the propriety of sex-offense-related conditions in two decisions, *United States v. Carter*, 463 F.3d 526 (6th Cir. 2006), and *United States v. Thomas*, 212 F. App'x 483 (6th Cir. 2007). In *Carter*, the defendant was convicted of being a felon in possession of a firearm, served his custodial sentence, and was released on supervised release. However, he violated the conditions of his release and the district court sentenced him to an additional custodial sentence, followed by the same terms of supervised release. Before the defendant finished his second custodial sentence, the government moved to include a special condition of supervised release that the defendant participate in a sexual offender treatment program, including polygraph testing, and the defendant objected. The district court granted the government's motion, citing the defendant's two prior convictions for rape during a burglary and assault with intent to commit rape in 1988.

On appeal, this Court vacated the special condition because it was not reasonably related to the nature and circumstances of the offense or the history and characteristics of the defendant. The Court held that, although it could consider the entire record before it in determining whether the condition was reasonably related to the history and characteristics of the defendant, none of the defendant's previous convictions supported such conditions. *Carter*, 463 F.3d at 531 (citing *Berridge*, 74 F.3d at 119). The Court adopted the rationale of the Eighth and Ninth Circuits in *United States v. Scott*, 270 F.3d 632, 633 (8th Cir. 2001), and *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003), and held that a gap of seventeen years was too remote for the special conditions to be reasonably related. *Id.* at 532; *see also United States v. Scott*, 270 F.3d 632, 633 (8th Cir. 2001) (holding that a gap of fifteen years was too remote); *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (holding that a gap of twenty years was too remote). The Court noted that, "[w]e need not and do not decide precisely how much time must elapse before a sex offense becomes too remote in time to be reasonably related to a sex-offender condition, as the instant gap – Carter's 1988 sex offenses occurred seventeen years before the imposition of the sex-offender-treatment condition in 2005 – fits comfortably within the cases." *Carter*, 463 F.3d at 532.

Similarly, in *United States v. Thomas*, this Court vacated the special condition that the defendant participate in a sex offender assessment program because the condition did not bear a reasonable relation to the nature of the offense or the history and characteristic of the defendant. Thomas was convicted in 1996 on three counts of bank robbery, served his custodial sentence, and was released on supervised release in 2005. Approximately one month after his supervised release term commenced, the probation officer petitioned the district court to add the special condition based on Thomas' 1986 conviction for sexual battery. The district court granted the petition and Thomas appealed. This Court held that the nineteen year gap between the conviction and the imposition of the condition was too remote under *Carter*. *Thomas*, 212 F. App'x at 488.

The case currently before the Court is distinguishable from *Carter* and *Thomas* as well as the other cases cited by Brogdon. *See, e.g., Scott*, 270 F.3d 632; *T.M.*, 330 F.3d 1235. First, this case does not merely involve a single sexual offense, but *seven convictions* from 1985 to 1994 for indecent exposure, covering at least nine separate incidents from 1984 to 1993. (J.A. 75-83) Some of these incidents involved minors, and most involved more than one victim. Additionally, in 1989, the defendant was charged with aggravated sexual assault for unlawfully and feloniously placing his intimate parts on his three-year old son. (J.A. 79) He pled guilty to aggravated assault and was prohibited from having any contact with his son.

It is also notable that, unlike *Carter*, *Thomas*, *Scott* and *T.M.*, the most recent incident in the current case occurred only twelve years ago, when Brogdon was 32. The presentence report indicates that Brogdon received psychological treatment for the repeated sexual incidents in approximately 1984. However, the incidents continued at least through 1993, including convictions for exposing himself to high school cheerleaders and multiple incidents at victims' residences. It

is undisputed that Brogdon suffers from some level of mental retardation, and his counsel repeatedly argued at sentencing that his condition is not likely to change.

The United States concedes that the special conditions are not reasonably related to being a felon in possession of a firearm. However, it is clear from the record that the conditions are reasonably related to Brogdon's numerous convictions for sex offenses as recently as twelve years ago. This Court reviews the district court's imposition of special conditions for an abuse of discretion, and it cannot be said that the district court abused its discretion in imposing the sex-offense-related conditions under the circumstances of this case.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence and conditions of supervised release imposed by the district court.