NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0510n.06

No. 25-3147

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 03, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| STEPHEN TERRELL HORN, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: STRANCH, BUSH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Stephen Horn appeals the district court's imposition of a special condition of supervised release that prohibits him from residing with any woman until he receives domestic violence counseling. He argues that the condition is substantively unreasonable and unduly restricts his freedom of association. Because the special condition bears a close nexus to both the protection of others and Horn's criminal history, which includes numerous domestic violence convictions, we **AFFIRM**.

## I. BACKGROUND

Between 2012 and 2018, Horn was convicted of assaults against women on four occasions. His first misdemeanor domestic violence conviction occurred in 2012, after he punched his biological "mother in the face multiple times and dragged her across the floor." R. 97, Hr'g Tr., PageID 467. Later, in 2016, Horn was convicted of misdemeanor assault for pushing and grabbing the neck of an unnamed female. R. 97, Hr'g Tr., PageID 467–68. Then in 2017 and 2018, while

on state supervision for the 2016 assault, Mr. Horn was convicted twice more of misdemeanor domestic violence against his then live-in girlfriend. In the first of these two offenses, Horn "choked" his girlfriend, "causing visible injury to her neck," and slashed her tires with a knife. R. 97, Hr'g Tr., PageID 468. The second offense involved a threat to the woman's life and property that caused her to fear for her safety. During this period, and in the years following, Horn committed a number of other offenses and supervised release violations, including aggravated menacing, criminal damage, an escape offense, operating a vehicle while intoxicated, and several others.

On April 7, 2020, while on state supervision, Horn and another man attempted to saw off the barrel of a shotgun. In the process, it discharged and struck the other man in the feet. The gun was not registered to either man. Authorities subsequently searched the residence where the shooting occurred and found a revolver that Horn admitted belonged to him. On August 11, 2021, a grand jury in the United States District Court for the Northern District of Ohio indicted Horn on two charges: possessing a firearm after being convicted of misdemeanor crimes of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2); and receiving or possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Pursuant to a plea agreement with the government, Horn pled guilty to both charges. The district court sentenced Horn to 46-months' imprisonment followed by three years of supervised release. The court imposed several conditions on Horn's supervised release, including a requirement that Horn receive approval for his residency. While in custody, Horn was involved in three incidents: one was an attempt to sneak in drugs and contraband; the other two involved the possession of weapons.

Horn completed his prison term and began supervised release on January 12, 2025. Within ten days, Horn had violated three supervised release conditions: unauthorized use of drugs; failure to comply with random drug screening; and failure to comply with residence requirements. Horn violated the residence requirement by living with the mother of his child, a woman against whom he has not been accused of domestic violence but with whom probation had informed him he could not reside. Horn's probation officer filed a report detailing these violations.

The district court held an initial supervised release hearing on January 29, 2025, at which Horn admitted to all three violations. The court explained that based on the nature of Horn's violations and his criminal history category, the Guidelines range was 8 to 14 months' incarceration, with a statutory maximum sentence of two years. Horn's counsel requested that Horn be permitted to resume supervised release, noting that Horn had accepted responsibility for the violations and that he was slated to begin mental health treatment, and requested that Horn be permitted to live with his stepmother. The Government requested a guidelines sentence followed by supervised release, arguing that a term of incarceration was necessary based on Horn's inability to "follow the rules." R. 96, Hr'g Tr., PageID 449–50.

The court first noted its concerns with Horn's lengthy criminal history and his repeated noncompliance with supervised release conditions. It walked through Horn's convictions dating back to 2012, including his multiple domestic violence offenses, described Horn's record as "not a pretty picture," and stated its inclination to sentence Horn to a term of incarceration. R. 96, PageID 452, 454. Regarding Horn's residence, the court stated that it would likely prohibit Horn from residing with any women due to his "long history of domestic violence," including "attacks on [his] own mother." R.96, PageID 455–56. Ultimately, the court continued the hearing for thirty days to consider an appropriate sentence, with Horn remaining in custody.

In the final supervised release hearing held on February 25, 2025, the court once again considered the sentence for Horn's supervised release violations and heard the parties' positions. Horn stated that the mother of his child, in addition to his stepmother, would be willing to house him upon his release. The court stated that it found the sentencing—and decisions around Horn's residency, in particular—to be "a challenge because of his prior record . . . . with domestic violence and assaultive behavior, particularly against women." R. 97, Hr'g Tr., PageID 467. The court surveyed Horn's criminal history dating back more than a decade, with a particular emphasis on his prior violent offenses and supervised release violations. It noted, disapprovingly, that Horn had been found with dangerous weapons and contraband while in custody for the federal firearms charges. The court described Horn's history as "deeply troubling" and emphasized concern regarding with whom Horn would reside. Based on his prior assaults of his mother and "live-in companions," the court characterized Horn as a "high risk offender," especially toward women and expressed doubt about Horn's proposed living arrangements with either his stepmother or the mother of his child. R.97, PageID, 468–70.

Ultimately, the court imposed a split sentence of six months' imprisonment and six months in a halfway house, followed by two years of supervised release. In addition to standard conditions of release, it ordered Horn to receive mental health treatment and enter domestic violence-related counseling. The court also imposed a special condition of release ordering Horn not to "reside with a female" until he had begun the domestic violence counseling and there was "some indication that his counseling is going well and we need not be concerned about someone being injured or harmed by his behavior." R. 97, PageID 475. The court then gave Horn's counsel an opportunity to object to this sentence after it was pronounced; he did not.

## II.   DISCUSSION

"This Court reviews the district court's imposition of special conditions of supervised release for an abuse of discretion," considering both procedural and substantive reasonableness. *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007).  As to the procedural aspect, the district court must, at the time of sentencing, "'state in open court the reasons for its imposition of the particular sentence,' including its rationale for mandating special conditions of supervised release."  *United States v. Kingsley,* 241 F.3d 828, 836 (6th Cir. 2001) (quoting 18 U.S.C. § 3553(c)).  Under the substantive inquiry, special conditions must be "reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public." *Brogdon*, 503 F.3d at 563 (quoting *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997)).  Under 18 U.S.C. § 3583(d), a special condition must meet three requirements; it must:  (1) bear a reasonable relation to sentencing factors, which include the nature of the offense, the history and characteristics of the defendant, adequate deterrence, and the protection of the public; (2) involve "no greater deprivation of liberty than is reasonably necessary" to achieve the goals of sentencing; and (3) accord "with any pertinent policy statements issued by the Sentencing Commission." *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006) (quoting 18 U.S.C. § 3583(d)(2)-(3)); *see* 18 U.S.C. § 3553 (detailing sentencing factors).  If the condition of supervised release is both procedurally and substantively reasonable, it must be upheld.  *See Brogdon*, 503 F.3d at 563.

Horn challenges the substantive reasonableness of the district court's imposition of the special condition that prohibits him from cohabitating with women before receiving domestic violence counseling.  Although he does not raise a procedural challenge, we note that the district court met its procedural burden by explaining, in open court, the reasoning behind the imposition of the condition.  *See, e.g.*, *United States v. Faber*, 718 F. App'x 349, 352 (6th Cir. 2017) (finding

procedural reasonableness where the court stated its "rationale for imposing the special condition of supervised release, relying on both goals of probation").

While Horn characterizes the special condition as substantively unreasonable, he does not specify which of the three statutory requirements it allegedly violates. His argument appears to be focused on the second: whether the condition involves a greater deprivation of liberty than is reasonably necessary for the relevant sentencing purposes. Horn contends that the special condition is overbroad because it restricts him from living with any woman, without exception, prior to receiving counseling. Horn argues that he should be permitted immediately upon release to live with either the mother of his child or his stepmother—his "loved ones"—because he has never been violent toward them, they know of his history, and are willing to house him. He claims that the special condition violates his right to freely associate with the two women because the evidence fails to show that he "poses a danger" to them and, therefore, the condition "is not reasonably necessary to protect those individuals or further [his] rehabilitation." Appellant's Br. 15 (quoting *United States v. Worley*, 685 F.3d 404, 408 (4th Cir. 2012)).

As a general matter, district courts possess "broad discretion to impose appropriate conditions of supervised release." *Ritter*, 118 F.3d at 506. Exercise of this discretion is "subject to careful review" where special conditions implicate "fundamental rights such as freedom of speech and freedom of association." *United States v. Peete*, 919 F.2d 1168, 1181 (6th Cir. 1990). However, if such conditions are "primarily designed to meet the ends of rehabilitation and protection of the public, they are generally upheld." *Ritter*, 118 F.3d at 504; *see, e.g.*, *Peete*, 919 F.2d at 1181 (upholding special condition prohibiting city councilman, who had sought bribes in exchange for his vote, from serving in or seeking elected public office for duration of supervised release).

In reviewing supervisory release conditions that implicate fundamental rights, our precedent shows that the nexus between the nature of the restriction and the defendant's circumstances is essential. Indeed, the closer the nexus, the more likely the condition is substantively reasonable. Two cases involving similar conditions—both of which implicate the freedom of association—illustrate this point. In *United States v. Brandenburg*, we upheld a special condition prohibiting a defendant who had a "history of abusing women with whom he lives" from cohabitating with women for the duration of his supervised release. 157 F. App'x 875, 879 (6th Cir. 2005). "Because of this history," we noted that it was reasonable for the district court to "believe[] that Defendant was likely to abuse any female with whom Defendant lived." *Id.* Conversely, in *United States v. Worthington*, we vacated a special condition prohibiting a defendant from residing with "an unrelated, unmarried female" because the defendant's underlying offenses were drug charges that did not bear any relation to the residency restriction. 145 F.3d 1335, at *17–18 (6th Cir. 1998) (unpublished table decision).

This case falls on the *Brandenburg* side of the spectrum. The record shows that Horn has a lengthy criminal history comprised of numerous domestic violence offenses against women with whom he resided, including his biological mother and a live-in girlfriend. Most of these offenses occurred while Horn was on state supervision, including while he was on probation for an instance of (nondomestic) violence against a woman. The court considered this extensive history, as well as Horn's other offenses, in imposing the requirement that Horn receive domestic violence treatment before residing with women. This special condition has a close nexus to Horn's particular circumstances, the nature of his prior offenses, and the protection of others.

As to the breadth of the condition, we do not find an abuse of discretion in the district court's choice to include all women—including the two women Horn says have agreed to house

him—in this restriction. Based on the record, it was reasonable for the court to conclude that, without domestic violence counseling, Horn is "likely to abuse any female with whom [he] live[s]." *See Brandenburg*, 157 F. App'x at 879. The condition, moreover, is temporary by its terms: it can conclude early, should Horn show progress with his domestic violence counseling. In this regard, the condition is less restrictive than the one in *Brandenburg*, which extended for the duration of the defendant's supervised release, without the possibility of early termination. *See id.* at 880.

Horn did not specifically address the remaining statutory requirements for substantive reasonableness, but we conclude that these, too, support the propriety of the special condition. Regarding the first, the condition is certainly reasonably related to several sentencing factors: as discussed, it is directly tied to Horn's criminal history and is aimed at preventing the same kind of harms to his live-in companions from repeating. As to the third requirement, the condition does not conflict with any of the Sentencing Commission's policy statements. *See* USSG § 5D1.3.

In sum, because the special condition bears a close nexus to Horn's criminal history, seeks to protect the public, and is appropriately tailored, the condition is substantively reasonable. The district court did not abuse its discretion.

### III.   CONCLUSION

For the foregoing reasons, the district court's imposition of the special condition of supervised release is **AFFIRMED**.