NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0702n.06

No. 08-2395

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 29, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHAEL STEEBY, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and SUTTON, Circuit Judges; REEVES, District Judge.[*]

SUTTON, Circuit Judge. Michael Steeby pleaded guilty to nine violations of his supervised-release conditions and appeals the resulting 18-month sentence. Because the sentencing proceeding raises some unanswered and material procedural questions, we vacate and remand for resentencing.

I.

In June 2005, Steeby pleaded guilty to manufacturing prohibited electronic communication intercepting devices—eight to ten pirated DirecTV access cards. *See* 18 U.S.C. § 2512(1)(b). The district court sentenced Steeby to five years of supervised release in November 2005, including six months of home confinement, and ordered him to pay $10,000 in restitution. By September 2007,

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Steeby had accumulated five violations of his supervised-release conditions, including failing to provide community service on a regular basis, failing to make restitution payments, missing appointments with his probation officer and obtaining lines of credit without prior approval. At the request of Steeby's probation officer, the district court intervened in November 2007, sentencing Steeby to thirty days of imprisonment and thirty-five months of supervised release.

Matters did not improve, including some matters beyond Steeby's control. In October 2007, his oldest son committed suicide. Several months later, due to Steeby's month-long imprisonment in January 2008, he lost his job, and he never regained employment. According to his sister, Steeby "was just never the same" after these two events, going days at a time without speaking to anyone. R.140 Attach. 2 at 4. By July 2008, he was admitted briefly to Forest View—a secured mental health facility—because he appeared suicidal, after which his therapist diagnosed him with depression triggered by his son's suicide and bipolar disorder. Steeby also became addicted to painkillers as "a way to self-medicate the intense pain" caused by his son's death. R.138 Attach. 1. All of this culminated in a September 2008 arrest for attempting to obtain Vicodin through a false prescription.

After the arrest, Steeby's probation officer asked the district court to revoke Steeby's supervised release. Steeby tested positive for cocaine a week later, and a magistrate judge ordered him detained pending a revocation hearing because he appeared suicidal. Steeby asked the district court to release him on bond and adjourn his revocation hearing so that he could return to Forest View for more mental health treatment, which would help him to comply with the supervised-release conditions in the future.

The district court denied Steeby's request, and Steeby pleaded guilty to nine supervised release violations. At the revocation hearing, the district court said that it would prefer to impose thirty to sixty days of mental health treatment at Forest View or a similar secured facility rather than imprison Steeby. The district court also seemed to suggest that a facility might count as "secured" even though Steeby could voluntarily leave at any point so long as the court received "a commitment from Mr. Steeby [that] he's going to stay someplace and his family, they're not going to go get him, and he's not going to run away for 30 or 60 days." R.153 at 14. The district court adjourned the hearing at that point so Steeby's probation officer could look into the available treatment facilities in the Grand Rapids area and provide the court with a report.

A week later, the probation officer reported that Forest View refused to accept Steeby as a patient because he "had been noncompliant [and] assaultive" during his previous visit and that no other secured mental health facilities existed in the Grand Rapids area. R.154 at 3–4. Steeby proposed an unsecured facility as an alternative. He promised to stay at the facility for thirty to sixty days, noting that his family had committed to keep him there and had told him that if he did not stay "he shouldn't plan on coming home," but instead "just keep on going right to jail." *Id.* at 5–6. The district court rejected this alternative: "No, not in this case. Not in this case, no. That's out." *Id.* at 6. It revoked Steeby's supervised release, *see* 18 U.S.C. § 3583(e)(3), and sentenced him to eighteen months imprisonment, explaining that "[t]he nature and circumstances of [Steeby's] subsequent criminal behavior . . . together with the inability of supervised release characteristics to address Mr. Steeby's circumstances" indicated Steeby needed "the Court's firm hand," not more

supervised release.  R.154 at 8.  The court recommended that the Bureau of Prisons provide Steeby with appropriate mental health treatment.

II.

Steeby challenges the procedural and substantive reasonableness of his sentence.  We need not address his substantive claim because the procedural one has merit and warrants resentencing.

As a general matter, we review procedural challenges to sentences in this area—imposed after the revocation of supervised release—under the same standards that we apply to sentences after a conviction.  *See United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009).  A district court imposes a procedurally unreasonable sentence by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Gall v. United States*, 552 U.S. __, 128 S. Ct. 586, 597 (2007).  Perhaps as a result of the unusual circumstances swirling around the two sentencing hearings in this case, the district court did not satisfy these requirements.

The key problem is that the court did not "explain[] the basis for rejecting" Steeby's non-frivolous request for a sentence other than an eighteen-month prison term, namely a commitment to a mental health facility in the area.  *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (quotation marks omitted).  Steeby acknowledged that he and his family were prepared to accept an alternative sentencing arrangement proposed by the district court a week earlier.  Under these

circumstances, the court's statement ("No, not in this case.  Not in this case, no," R.154 at 6) does not adequately explain why a form of sentencing that the court and defendant seemingly accepted—sixty days in either a secured mental health facility or an unsecured facility with a commitment by Steeby and his family that he would not attempt to leave until his treatment was complete—would be abandoned when no secured mental health facility proved available to take Steeby again.  The absence of a secured facility, to be sure, establishes why the court could not use that option.  But it does not show why the court could not send him to an unsecured facility, given that Steeby had identified one and given that he (and his family) had made the kind of commitment to using it that the court required.

No doubt, district courts often (permissibly) reject defendants' sentencing arguments indirectly when they provide affirmative reasons for imposing a sentence, and we have never required district courts to respond directly to every sentencing argument.  *See United States v. Polihonki*, 543 F.3d 318, 325 (6th Cir. 2008).  But we at least require an implicit response, *see United States v. Liou*, 491 F.3d 334, 340 (6th Cir. 2007), and we cannot discern one here.  The district court's stated reason for the sentence—that Steeby's prescription drug abuse and cocaine use made continued supervised release inappropriate and an eighteen-month prison term necessary—implicitly rejects a 60-day stay at Forest View or any other mental health facility.  The problem is that, a week earlier, the court viewed a stay at Forest View as the preferred sentence and suggested that a stay at an unsecured facility might work as well.  While the court assuredly was entitled to reject the Forest View option when the facility said it would not accept Steeby, that

development by itself does not explain why an eighteen-month sentence makes sense. In view of the court's preference a week earlier for a much shorter term of secured commitment, one consistent with Steeby's request, some sort of explanation was in order for such a marked increase in the form and length of the sentence.

Other gaps in the court's explanation for the sentence add to the difficulty of conducting "reasonable appellate review." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) (quotation marks omitted). The court never mentions the sentencing guidelines—the required "starting point" for sentencing decisions, *Gall*, 128 S. Ct. at 596. While we know it imposed a sentence at the bottom of the guidelines range, that is only because we calculated the guidelines range ourselves. *See* U.S.S.G. § 7B1.4 (yielding a guidelines range of eighteen to twenty-four month for a grade-A supervised release violation and a criminal history category of III). So far as the sentencing transcript is concerned, it is not clear whether the district court meant to impose a sentence below the guidelines, at the bottom of the guidelines or at some other point.

The court's sentencing explanation also does not clear the low threshold of affirmatively "showing that it considered the § 3553(a) factors." *United States v. Penson*, 526 F.3d 331, 338 (6th Cir. 2008). The district court never mentions the § 3553(a) factors or gives any indication it was aware of its obligation to consider those factors in the context of revoking supervised release. *See* 18 U.S.C. § 3583(e)(3).

On appellate review, it is true, we may demand less explanation when reviewing a within-guidelines sentence. *See Rita v. United States*, 551 U.S. 338, 358–59 (2007). Because the guidelines often account for the other § 3553(a) factors, the district court's affirmative adoption of a guidelines sentence in a run-of-the-mine case frequently will go a long way to explaining a sentence. *Id.* at 359. But a court cannot rely on the guidelines to justify a sentence when it fails to mention them.

The government persists that the court "had no alternative to incarceration" once it learned that Steeby had been "noncompliant and assaultive" during his previous stay at Forest View. Gov't Br. at 13. That might well be a legitimate explanation in the abstract. But it is not an adequate explanation if it was never given, leaving us to speculate why the court did what it did. *See United States v. Thomas*, 498 F.3d 336, 341 n.3 (6th Cir. 2007); *cf. United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

In the district court's defense, there is a part of this sentencing proceeding that suggests "no good deed goes unpunished." In view of Steeby's utter failure to comply with prior supervised-release conditions, the district court at the first sentencing hearing could have taken the path of least resistance—imposing an eighteen-month sentence—and likely would have had ample grounds for doing so. Perhaps recognizing that Steeby's problems stemmed from a combination of addictive behavior, family tragedy and mental illness, however, the court to its credit paused over the question of whether more incarceration was the best answer, even though it might have been the easiest answer, to Steeby's serial supervised-release violations. The problem for us is that the two sentencing transcripts do not explain why the possibility of a stay at a secured *or* unsecured mental

health facility, as suggested at the first hearing, was not on the table at the second hearing, where the court seems to say that the absence of an available *secured* facility requires an eighteen-month sentence. Precisely because the court's thoughtful concerns about Steeby's welfare at the first sentencing hearing remain valid, including the possibility of a stay at an unsecured facility, we think it appropriate to ask the court to explain the basis for its decision rather than indulging our own speculations.

III.

For these reasons, we vacate Steeby's sentence and remand to the district court for resentencing.