NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0763n.06

No. 10-3209

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Nov 14, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

RONALD L. MINOR,

　　　　Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

**OPINION**

BEFORE:　ROGERS, McKEAGUE and DONALD,[*] Circuit Judges.

**Donald, Circuit Judge.** Defendant Ronald Minor was convicted in 1992 on one count of

conspiracy to possess cocaine base with the intent to distribute. Defendant began supervised release

in August 2007. In 2008 and 2009, he committed multiple violations of the conditions of his

supervised release, resulting in a petition for warrant being filed in December 2009. The district

court modified Defendant's supervised release by adding a 120-day term at a halfway house.

Defendant argues that when modifying his supervised release, the district court failed to consider the

purpose of supervised release and the mitigating arguments, resulting in procedural error, and that

---

[*]At the time this case was argued, the Hon. Bernice B. Donald was a district judge, sitting by
designation. On September 8, 2011, Judge Donald became a judge of the Sixth Circuit Court of
Appeals.

the modification was substantively unreasonable given the facts presented. We AFFIRM the district court's modification.

## I. BACKGROUND

On December 2, 1992, Defendant was convicted of one count of conspiracy to possess with the intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 846, and sentenced to 210 months' incarceration to be followed by five (5) years supervised release. Defendant began his supervised release on August 14, 2007.

On December 14, 2009, a petition for warrant or summons was filed, alleging that Defendant violated four terms of the supervised release. (Pet. for Warrant or Summons, R. 8) First, on January 19, 2008, Defendant left the judicial district without permission and got a speeding ticket in Tennessee. (*Id*. at 2.) Second, Defendant failed to report to the probation officer as directed on December 29, 2008, May 1, 2009, September 9, 2009, October 6, 2009 (drug screen), November 6, 2009, November 16, 2009, and December 4, 2009. (*Id*.) Third, Defendant failed to notify his probation officer within 72 hours of any change in his residence or employment address. (*Id*.) On June 9, 2009, Defendant left a voicemail stating that he was living with his uncle and refusing to provide the address. (*Id*.) On July 17, 2009, the probation officer visited Defendant's reported address, and his mother told her that he was living with a friend at an unknown location. (*Id*.) On September 28, 2009, the probation officer sent an appointment letter to the same address. (*Id*.) On October 7, 2009, Defendant left a message for his probation officer saying that he had just received the letter from his mother "because he had recently moved." (*Id*.) Fourth, Defendant did not report that he had been arrested or questioned by police within 72 hours of the incident when (1) on

2

January 19, 2008, he was stopped by police in Tennessee for speeding; (2) he was arrested on March 18, 2008, after being indicted on a felony drug possession charge; and (3) he was arrested on August 1, 2009, and charged with receiving stolen property, but he did not report the arrest to his probation officer until September 13. (*Id*. at 3; Appellee's Br. 9-10.)

In the Supervised Release Violation Report, the probation officer stated that "Minor's pattern of unstable residency and employment have been evident since th[e] start of his supervision" and his "whereabouts are consistently being questioned." (*Id*. at 10.) The report also noted a June 2009 non-compliance hearing with the probation officer and stated:

> In light of Mr. Minor's continued non-compliance and instability, it was determined that a half-way house placement would best assist him in addressing the above issues. After being confronted with his chronic non-compliance, Minor finally admitted that outside influences had begun to crawl back into his life. Initially he agreed to the modification, though he then retracted, indicating that he had gotten his life back in order.

(*Id*.)

The district court conducted a hearing on February 3, 2010. (Supervised Release Modification Proceedings Tr., R. 19.) Defendant admitted the Grade C violations as they were alleged in the Supervised Release Violation Report. (*Id*. at 2.) The probation office sought to modify the conditions of the supervised release by adding a term of 90 to 120 days in a halfway house. (*Id*. at 4.)

Defendant argued for a sentence of house arrest because of his recent accomplishments. (*Id*. at 3.) He had begun attending college as a full-time student at Columbus State University during the winter quarter. (*Id*.) In December 2009, he got his own apartment, signed a one-year lease, and was hired as the Development Director/Coordinator at the New Song Community Church. (*Id*.)

3

Defendant had also worked as an intern at an insurance agency in conjunction with his school work. (*Id*. at 6.) Defendant stated that there was a period where his transition was difficult, but since then, he has had the opportunity to get into school, secure employment, and do positive things in the community. (*Id*. at 4-5.) Defendant believed that a period of 90 to 150 days of house arrest would be a fair sanction. (*Id*. at 4.)

The probation officer informed the Court that it was her understanding that Defendant was no longer working at the insurance agency, that she had no details about his new employment position, and that she was concerned that there may be third-party risks with the position at the church. (*Id*. at 7.) The probation officer also noted her concerns about Defendant's pending receiving stolen property case. (*Id*.)

The Court stated:

> Your work with the development and work on the project there at the church is admirable, and the Court will take that – is taking that into consideration, along with your prospective job there in the insurance industry. And I acknowledge that they are positive aspects of your quest.

(*Id*. at 6.) The Court noted that from its experience, the Development Director position was a volunteer position, not full-time employment. (*Id*. at 8.) The Court stated,

> So, you have got to get with it on that full-time employment. And the insurance business, if you are no longer with them, I don't know what the – what that means. They have got to sponsor you, don't they, for the insurance, to get your license?

(*Id*.)

The Court applied the suggested modification because Defendant failed to show cause why his supervised release should not be modified. (*Id*. at 8-9.) There were no objections to the modification. (*Id*. at 9.)

4

On February 3, 2010, Defendant's conditions of supervised release were modified to include one hundred twenty (120) days at the Ralph W. Alvis house, a halfway house. (R. 15.) A timely notice of appeal was received by the district court on February 12, 2010. (R. 17.)

## II. ANALYSIS

The district court has broad discretion to impose appropriate conditions of supervised release. *United States v. Brandenburg*, 157 F. App'x 875, 879 (6th Cir. 2005) (citing *United States v. Ritter*, 118 F.3d 502, 506 (6th Cir. 1997). Pursuant to 18 U.S.C. § 3583(e),

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . modify . . . the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

18 U.S.C. § 3583(e)(2). Section 3553(a)(1) addresses the "nature and the circumstances of the offense and the history and characteristics of the defendant." Section 3553(a)(2)(B) addresses the need for the sentence imposed "to afford adequate deterrence to criminal conduct." Section 3553(a)(2)(C) addresses the need for the sentence imposed "to protect the public from further crimes of the defendant." Section 3553(a)(2)(D) addresses the need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The court may also consider the kinds of sentence, the sentencing range established for the applicable category of offense, the applicable guidelines, policy statements, or amendments issued by the U.S. Sentencing Commission, the need to avoid unwarranted sentence disparities, and the need to provide restitution to victims. *See* 18 U.S.C. §§ 3553(a)(4-7).

5

The United States Sentencing Guidelines further direct that "[u]pon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." U.S. Sentencing Guidelines § 7B1.3(a)(2) (2010). At the initial setting of a condition of supervised release, the court may order a condition that

> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d).

The district court's imposition of special conditions of supervised release is reviewed for an abuse of discretion. *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007). Appellate review of the imposition of a special condition of supervised release has procedural and substantive dimensions. *United States v. Carter*, 463 F.3d 526, 528-29 (6th Cir. 2006). To satisfy the procedural dimension, "'The [district] court, at the time of sentencing, [must] state in open court the reasons for its imposition of the particular sentence,' including its rationale for mandating special conditions of supervised release." *Id.* (quoting *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001)). Where, as here, the district court asked for objections after imposing the sentence, and the defendant failed to object, arguments relating to the procedural reasonableness of the sentence are reviewed for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (citing *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004)). "Under this standard, a defendant

6

must demonstrate that the district court's error was obvious or clear, affected his substantial rights, and affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Harmon*, 607 F.3d 233, 238 (6th Cir. 2010) (citing *United States v. Houston*, 529 F.3d 743, 750 (6th Cir. 2008)).

The Sixth Circuit in *Carter* outlined the substantive analysis for imposition of a non-mandatory condition of supervised relief:

> A sentencing court may impose a non-mandatory condition of supervised release only if it meets three requirements. First, the condition must be "reasonably related to" several sentencing factors. 18 U.S.C. § 3583(d)(1). These factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D). Second, the condition must "involve[ ] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes. 18 U.S.C. § 3583(d)(2). These purposes are "to afford adequate deterrence to criminal conduct; ... to protect the public from further crimes of the defendant; and ... to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(B)-(D). Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). *See Kingsley*, 241 F.3d at 836-37 (reviewing these detailed requirements); *Ritter*, 118 F.3d at 504 (same). Because they are written in the conjunctive, a condition must satisfy all three requirements. *See* 18 U.S.C. § 3583(d)(1)-(3). However, a condition need not satisfy every single factor and purpose within each of the first two requirements. *See United States v. Johnson*, 998 F.2d 696, 699 (9th Cir. 1993).

*Carter*, 463 F.3d at 529 (footnotes omitted); *United States v. Alexander*, 509 F.3d 253, 256 (6th Cir. 2007).

1. Procedural Error

Defendant argues that the district court failed to consider the statutory requirements in 18 U.S.C. § 3553(a) when imposing the halfway house term, and a remand for resentencing is

7

appropriate. (Defendant's Br. 11, 14.) He argues that there is no indication that the district court considered whether the term involved "no greater deprivation of liberty than is reasonably necessary" or bore a "direct relationship to the dual goals of advancing a defendant's rehabilitation and protecting the public." (*Id*.) He argues that there is no indication that the district court considered the statutory factors and that the court made no findings. (*Id*.) He contends that the modification imposed "would seem, on its face, to be a clear indication that" the district court did not consider the statutory factors or the goals of rehabilitation because his apartment, job, and classwork were placed in jeopardy. (*Id*.)

Defendant further argues that the district court failed to consider his mitigation arguments showing that he was readjusting to society, had obtained employment and an apartment of his own, and had begun taking university classes. (*Id*. at 11, 14.) He asserts that the court initially indicated that it would take mitigation into account, but then ignored his claims and failed to provide a reason why these facts did not support house arrest. (*Id*. at 14.) He relies on *United States v. Steeby*, 350 F. App'x 50 (6th Cir. 2009), for the proposition that a case should be remanded for re-sentencing when the court did not adequately explain why the defense's suggested alternatives would not adequately meet the purposes of sentencing. (*Id*. at 12.)

The United States argues that Defendant's reliance on cases involving appellate review of sentences for reasonableness is misplaced because the district court did not revoke Defendant's supervised release, it only modified the conditions of his supervised release. (Appellee's Br. 14.) The United States concedes that the district court did not make "any findings" about the relationship between the special condition and the goals of rehabilitation and the protection of the public or provide reasons why Defendant's mitigation arguments did not support the recommendation of house

8

arrest. (*Id*. at 15.) However, the United States, citing *Brogdon*, 503 F.3d at 564, argues that the Sixth Circuit

> has repeatedly held that a sentencing court's failure to expressly explain its reasons for exacting a particular special condition of supervised release will be deemed harmless error if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety.

(*Id*. at 15.) The United States further argues that there is no evidence to support Defendant's claim that the modification imposed would jeopardize his job, apartment, or classwork. (*Id*. at 16.)

In his reply, Defendant argues that whether the district court's action is labeled a modification or a revocation, the court should have comported with the full requirements of the sentencing analysis. (Defendant's Reply 5.) He contends that failure to do so is reversible error. (*Id*.) He argues that there was a deprivation of liberty because time spent in a halfway house is "punitive and confinement" and is the equivalent of "incarceration." (*Id*. at 4.)[1] Defendant contends based on *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999), that the court must "articulate at least enough of its reasoning to permit an informed appellate review." (*Id*. at 5.) Since there were no findings, he argues that a remand is required. (*Id*.)

"A district court need not explain its reasons for rejecting each argument made by a defendant." *United States v. Polihonki*, 543 F.3d 318, 325 (6th Cir. 2008). Nor is a district court required to "engage in a 'ritualistic incantation to establish consideration of a legal issue' . . . or 'make specific findings related to each of the factors considered.'" *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (quoting *McClellan*, 164 F.3d at 310). While the district court did not

---

[1]Defendant argues that a "modification" including a term of six months in a halfway house is beyond the authority of the district court. (*Id*.) The modification in this instance includes a term of less than six months.

specifically mention many of the sentencing factors or mitigating arguments in explaining its decision, the record clearly demonstrates that the district court considered all the facts and arguments presented. The district court found Defendant's work at the church and prospect of work in the insurance industry "admirable" and acknowledged the "positive aspects of [his] quest." However, the court also addressed concerns about third-party risks with the Defendant's employment as a Development Director for the church, his lack of full-time employment, and his pending case for receipt of stolen property. The district court set forth enough information to show that it considered the parties' arguments and had a reasoned basis for exercising its legal decision-making authority. *See United States v. Keisel*, 400 F. App'x 33, 42 (6th Cir. 2010) (quoting *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009)). There was no procedural error in the imposition of the special condition.

2. Substantive Error

Defendant contends that a review of the § 3553(a) factors indicates that a 120-day halfway house placement was "far in excess of that necessary to meet the purposes of sentencing." (Defendant's Br. 16.) He argues that the goal of supervised release is "to assist individuals in their transition to community life" and that he was meeting that goal at the time of the modification because he had obtained employment and an apartment and was taking college courses. (*Id.*)

The United States argues that Defendant has not explained what reason compels the conclusion that 120 days at a halfway house is "far longer than necessary to meet the purposes of rehabilitation." (Appellee Br. at 16.) He characterizes Defendant's argument as an assertion that "although more than 90 days on house arrest would be appropriate, 120 days in a halfway house is so obviously excessive as to be unreasonable." (*Id.* at 16-17.) The United States contends that the

10

proposition is dubious. (*Id.* at 17.) It further argues that under *Brogdon*, 503 F.3d at 563, the appellate inquiry in reviewing the substantive component of a special condition is limited to "whether it is reasonably related to rehabilitation or the protection of the public." (*Id.*)

The correct analysis for the substantive review of the imposition of a special condition was stated in *Carter* and *Alexander*, *see supra* pp. 8-9. Defendant's progress toward rehabilitation was recent. He obtained his lease in December 2009, and only began school in the winter term. He obtained the job as a Development Director at the church in December 2009. Yet, he still had not obtained full-time employment.

The halfway house placement is reasonably related to the Defendant's history of not being able to maintain stable employment and a stable residence and his repeated failure to report to his probation officer and follow the conditions of supervised release. *See* 18 U.S.C. § 3553(a)(1). Further, during the period of supervised release, Defendant had three situations where he came into contact with law enforcement, including two arrests. Therefore, the placement is reasonably related to providing an adequate deterrent to criminal conduct and to protecting the public from further crimes. *See* 18 U.S.C. §§ 3553 (a)(2)(B) & (C).

The United States Sentencing Guidelines considers residence in a halfway house as "community confinement." U.S. Sentencing Guidelines § 5F1.1, cmt. n.1 (2010). The Guidelines allow for the imposition of community confinement as a special condition of supervised release. *Id.* at §§ 5F1.1 & 5D1.3(e)(1). However, community confinement "generally should not be imposed for a period in excess of six months." *Id.* at § 5F1.1, cmt. n.2.

Despite Defendant's argument that the halfway house is a more restrictive condition than house arrest, there is no evidence in the record that demonstrated any difficulty that Defendant would

11

suffer by the placement. A person under "home detention" is subject to "confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office." U.S. Sentencing Guidelines. § 5F1.2, cmt. n.1. Home detention can be more restrictive than time spent in a halfway house. *United States v. White*, 785 F. Supp. 1062, 1063-64 (D. Mass. 1992); *see United States v. Jones*, 107 F.3d 1147, 1169 n.7 (6th Cir. 1997) (Krupansky, J., concurring in part and dissenting in part).[2]; *see also Piro v. Duncan*, No. 08-491-TUC-CKJ, 2009 WL 259568, at *2 (D. Ariz. Feb. 4, 2009) (neither a halfway house placement nor house arrest is"official detention" for purposes of 18 U.S.C. § 3585(b) and noting the "highly restrictive" nature of house arrest versus the "restrictive"

---

[2]Judge Krupansky addressed the differences between home detention and a halfway house placement, noting that home detention is

> more akin to institutional incarceration. Whereas halfway house residency is a form of "community confinement" wherein the resident enjoys considerable freedom to engage in a variety of activities outside of the halfway house during "non-residential hours," U.S.S.G. § 5F1.1 & commentary (n. 1 & 2), a person under home detention is subject to "confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by all means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized." U.S.S.G. § 5F1.2, commentary (n. 1) (emphasis added). Indeed, the basic concept of a "halfway house" is a restrictive, supervisory, rehabilitative environment which is "halfway" between penal confinement and release into the general community. Moreover, the Guidelines permit a sentencing court to impose halfway house residency as a condition of probation or supervised re-lease in any case, U.S.S.G. § 5F1.1 & commentary (n. 1), whereas a district court may impose home detention as a condition of probation or supervised release "only as a substitute for imprisonment." U.S.S.G. § 5F1.2 (emphasis added). Therefore, home confinement is more similar to imprisonment (or a "confinement sentence") than is halfway house placement.

*Jones*, 107 F.3d at 1169 n.7.

12

nature of a halfway house). The record does not address any of the restrictions that Defendant would face in either a house arrest situation or in the halfway house. As there is no evidence that the modification is a deprivation of liberty greater than what is reasonably necessary, the district court did not abuse its discretion.

## III. CONCLUSION

The district court's comments at the hearing demonstrated that the parties' arguments were considered and that the court had a reasoned basis for its decision. There is no procedural error. There was no substantive error because placement in a halfway house was reasonable given Defendant's history of non-compliance with the conditions of his supervised release, unstable residence, unstable employment, and criminal involvement. The district court did not abuse its discretion. The district court's modification of the conditions of Defendant's supervised release is AFFIRMED.